UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

Chapter 11
Case No. 09-43576 (ess)

-----------------------------------------------------------X

IN RE:

SOUTH SIDE HOUSE, LLC,

**OPPOSITION OF DEBTOR TO
RECEIVER'S ATTORNEYS
FEES AND RECEIVER'S
ATTORNEYS ATTORNEYS
FEES**

Debtor.

-----------------------------------------------------------X

**TO:  THE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE**

The opposition of the above Debtor, by Leo Fox, its attorney, to the Applications for fees of

the Receiver's Attorneys pre-Petition, the law firm of Zegen & Fellenbaum, ("Z&F") and post-

Petition the law firm of Stein Riso Mantel LLP, ("SRM") respectfully represents:

**INTRODUCTION**

1.     The Application for fees is composed of three parts, the fees of the Receiver in the

amount of $18,418.95, the fees of Z&F in the amount of $69,140.50 and "Bankruptcy" counsel to

Z&F in the amount of $16,906.00.  These sums total $104,465.00.[1]

2.     For the reasons stated below, and based upon the benefits derived the Debtor

respectfully submits that the Application be denied, that the Receiver be awarded his fees, Z&F be

awarded the amount of $35,000.00 and SRM be awarded the fee of $3,500.00.

---

[1]   Z&F permitted a state of circumstances in which the managing agent Stonehenge
Management was permitted to seek compensation of 10% of collections plus additional fees for
its Managers of approximately $9,000.00 plus additional compensation consisting of one full
month for brokerage fees, whether or not the Management Company obtained the tenant,
resulting in excess of $45,000.00 in fees paid to the Management Company for the two months
of management.

3. Z&F allegedly incurred $14,000.00 from February 11 to February 28, 2009, $26,000.00 during March, 2009 and $5,580.00 in April, 2009, totaling approximately $46,000.00 in time charges up until the Chapter 11 filing. Thereafter, during the Chapter 11 case, and at a time that these Attorneys knew that their services were being terminated and the Receiver was no longer in possession, the Z&F allegedly incurred another approximate $27,000.00. The total request for Z&F fees is nearly $70,000.00. SRM's fees are nearly $17,000.00, all incurred post-Petition, by Bankruptcy Counsel who should be held to a higher standard on these matters.

4. These Court may view the sheer magnitude of these fees under at least two objective yardsticks. During the Receivership, according to the Management Company, the Management Company collected $369,000.00 in receipts. Z&F at best collected less than $30,000.00 in rent proceeds from the Debtor, and the balance of the funds were collected by the Management Company represented rent collections from tenants at the premises. (Moreover, the Debtor states that the payments had nothing to do with Z&F's efforts).

5. Another guage is the amount of the billings of the fairly large Law Firm of McCarter & English, representing the Bank in this case. McCarter & English commenced their services in January 2009, noticed the default of the Debtor, commenced an action in the United States District Court for foreclosure, appeared several times in the United States District Court, made a Motion for Summary Judgment and was required to oppose and defeat the active Opposition of the Debtor on substantive grounds and appeared at every conference and hearing during this period in the District Court (the Receiver's Attorney having only appeared once). As was noted in the payoff letter of the Bank of America, the total bill for McCarter & English was approximately $53,000.00 (Exhibit A).

6. In contrast, Z&F was retained in mid February 2009. Z&F never made a Motion or filed any other Pleading, and appeared only once in the District Court in connection with a misguided attempt to hold the Debtor in contempt. This attempt was initiated by a letter to the United State District Court. After expending significant hours, as set forth below, Z&F collected less than $30,000.00 in rent proceeds from the Debtor and obtained the Security Deposit Funds, which would all paid and delivered to the Receiver if only Z&F had requested such funds previously or had given the Debtor the five days notice Z&F had originally provided for. Yet, Z&F claims as of the Chapter 11 filing, that it purportedly rendered services of $45,000.00.

7. Z&F did not spend its time where it would count. Z&F's Bills reflect that Z&F's total pre-Petition direct contact with the Debtor or its Counsel and its Counsel aggregated 7.2 hours of its 101 hours of pre-Petition Time as reflected on its Bills. The large bulk of Z&F time has been spent talking to the Receiver and the Managing Agent and not to Third Parties.

8. Z&F was retained literally at the inception of the Receivership. Z&F does not attach to its Application any Retainer Agreement concerning the terms of its employment for the Receiver, the amount of fees which were charged or any other general terms and conditions of its employment. Z&F has not set forth the basis for his right to any compensation where there is no agreement set forth entered into on or about the time of his retention in March, 2009.

9. The Receivership was not complex or complicated as intimated by Z&F. An analysis has been made of the billings by Z&F, something which Bankruptcy Counsel should have arranged to include in this Application. The Time Records suffer from many defects including lumping and vagueness. Significant time was clearly spent on "Receiver" or "Managing Agent" duties including reviewing rent rolls, budgets and tenant complaints. The only concrete action taken by Z&F relate

3

primarily (A) to negotiations with the Management Company regarding the execution of the Management Agreement and the submission of an Amended Order appointing the Receiver, (B) the attempt to seek contempt against the Debtor and (C) to conferences with the Receiver, and the Management Company.

(A)

**THE AMENDED ORDER / MANAGEMENT CONTRACT**

10.    The Order of the United States District Court dated February 11, 2009 (Exhibit A to Application) did not provide authority for the Receiver to retain a Managing Agent. After consultations with Z&F, however, the Receiver employed Stonehenge Management LLC as his Manager.

11.    Part 36 of the Local Rules of the Chief Judge in Kings County, Section 36.1(a)(10) and 36.2(a), provides that all appointments of receivers and their managing agents be by Court order. Appointment of receivers is substantive under diversity rules and the Federal Court was required to use the state law guidelines for appointment of receivers and their managing agents.

12.    Instead of an immediate Application to the District Court , for an Order to be entered which authorized the Receiver to appoint a Managing Agent, Z&F embarked on a lengthy and involved process in the negotiating of an Amended Order and agreeing to a Management Contract. The Bills reflect commencing on February 14, 2009 more than 24 separate entries regarding the negotiations of the Amended Order and Management Contract. See for example February 16, February 19, February 20, February 21, March 10, March 11 and March 13. As late as April 29, the day before the Chapter 11 filing, Z&F continued to bill for a "review final proposed Amended Order submitted by McCarter & English; discuss same with the Receiver." (Indeed this entry and all or

4

nearly all of the entries are lumped together generally with a conference or discussion with the Receiver and the Managing Agent, requiring an allocation of time by the undersigned to the various task involved. In all, Z&F billed in excess of 17 hours or in excess of $7,500.00 for this task which never resulted in an Amended Order approving the Receiver's Appointment of a Managing Agent.

(B)

## THE CONTEMPT MOTION

13.    On or about February 26, 2009, the Managing Company requested certain rent roll information by e-mail of February 26, 2009. The Debtor responded by providing this information in a return e-mail. At that time, the Rent Roll reflected three vacancies and a total rent roll of $243,341.00, less commercial of $25,000.00 for a net of approximately $218,000.00.

14.    Thereafter on occasion the Managing Company would telephone and request information and indicated that he would make arrangement to pick up the information. The Debtor arranged for the documents and information to be available to be picked up by the Managing Agent. The Debtor never received any instructions from the Managing Company to deliver the rent monies or security deposit monies.

15.    It appears that on March 11, 2009 for the first time and without warning letters or requests, Z&F, proceeded to write a letter (Exhibit B), alleging failures or defects on the part of the Debtor in delivering information and documents which had not been previously requested or discussed and providing for five days' notice to the Debtor to deliver this information. Instead of waiting the five days, two days later Z&F requested that the Court permit a conference to make a motion to hold the Debtor in contempt (Exhibit C). At the March 16, 2009 conference before the Federal Court, the Debtor's attorney argued and stated that the Debtor had complied with the

Management Company's requests. The Court adjourned the hearing to March 23, 2009 based upon the Debtor's statements that the Debtor had been timely and these requests had not been previously sought.

16. By letter dated March 20, 2009 (Exhibit D), the Receiver wrote the Federal Judge reflecting that the Debtor had, in fact, complied with most, if not all of the requests, including all of the monetary requests.

17. A review of the time spent on this single episode sheds light on the Z&F Fee Application. Total "legal" time including all reviews of Pleadings in the Foreclosure Action, E-mail from the Receiver and the Managing Agent and the Bank's Attorneys, all contacts with the Bank (excluding "conferences", contacts with Myrtle Group, the work on the Amended Order and contacts with the Debtor) aggregates 37.4 hours, or $16,830.00. Total "direct contact with the Debtor " aggregates 7.2 hours, or $3,240.00. The total legal time spent over the Receivership plus the time spent with Z&F directing contact with the Debtor equals $19,620.00.

18. Against this total legal time, Z&F expended over 9 hours in writing the March 11 Letter (March 10, 2 plus 2.6; March 11, 2.6 and plus 1.7), and an additional 4.5 hours for the March 13, 2009 Letter, 7.1 hours on March 16, 8.2 hours on March 19 and 1.6 hours on March 20. These hours amount to in excess of 30 hours, or $13,600.00, were all predicated on Z&F's Statement to the Debtor that these demands, all sought for the first time in the March 11 letter were to be responded in five days but instead proceeded to demand resolution. Not surprisingly, Z&F sought on several occasions the permission of the Bank to seek another contempt citation against the Debtor.

6

**"THE CONFERENCES"**

19.    Z&F's bills contain numerous "discussions" and conferences generally made on a daily basis throughout the 2 ½ months of Z&F's services. (It is surprising that Z&F was busy with this Receivership literally every workday of the 2 ½ period). The Bills reflect at least 46 separate Conferences with the Receiver, the Managing Agent or the Managing Agent's Counsel or various combinations thereof. Many of the Conferences involve Receiver Management Agent Issues that do not involve legal services (e.g. 2/26, 3/3, 2/25). Total amount of time spent on Conferences is 32.6 hours, or $14,670.00 only slightly less than the total "legal" time spent.

**CHAPTER 11 FILINGS**

20.    On April 30, 2009, the Debtor's Chapter 11 case was filed. By letter, dated May 4, 2009 (Exhibit E), Z&F interjected himself and informed the Federal District Court and them Bankruptcy Court that, among other things, the Court could possibly refuse to direct the Receiver to turn over the Debtor's property and keep the Receiver, his Managing Company and Z&F in place.

21.    While the Application notes that Z&F purports to have significant experience as a Receivers Attorneys, (Application, Paragraph 22), Z&F believed itself to be lacking in Bankruptcy experience necessitating the Receiver's Retention of Bankruptcy Counsel (Application, Paragraph 10). This, of course, begs the question of why, if this was true, Z&F continued to "represent" the Receiver where Z&F admittedly did not have the qualifications to do so.

22.    There is a troubling lack of candor here and an apparent effort to hide the role of SRM upon the filing of the Chapter 11 case. Mr. Fellenbaum states in his Affidavit, in support of his Application, that his firm Z&F advised the Receiver, with the assistance of Bankruptcy Counsel,

regarding the transferring of books and records (Affidavit, Paragraph 26). The Application itself states that the Receiver and Z&F contacted SRM for Bankruptcy advice because of the fact that Z&F did not practice Bankruptcy Law (Application, Paragraph 10).

23. Yet, SRM never appeared in the Bankruptcy Case, until July 2009. Z&F appears to conceal the SRM role from this Court when in its letter of June 4, 2009 (Exhibit F) Z&F states to this Court that the Receiver and Z&F are in the process of retaining Bankruptcy Counsel, when in fact, Bankruptcy Counsel had been actively involved since the inception of the Chapter 11 case.

24. Morever, the difference in the Time Sheets of Z&F and SRM is also troubling. The first reference to SRM is in the July 6, 2009 Bill from Z&F (Motion Exhibit F), wherein Z&F purports to retain SRM to prepare the Z&F Attorney Fees Application. Yet SRM in its Time Records (Application Exhibit G) reflects active discussions with both Z&F and the Receiver literally from the inception of the Chapter 11 filing. Even if one were to charitably assume that Z&F was attempting to minimize the SRM role in the Bankruptcy, Z&F would still be required to list all contacts with SRM in its Time Sheets or disclose that such Time Sheets have been altered. (See Application Paragraph 21, Fellenbaum Affidavit Paragraph 9).

25. SRM's advice post-Petition aggregated approximately 7.1 hours as it related to ordinary Bankruptcy issues. On the other hand, Z&F purports to charge $12,240.00 for the post-Petition services allegedly performed by Z&F in May up through May 21.

26. The amount of time spent on the discussions for, and preparation of, the fee Application is a staggering $23,322.50. Z&F proceeds to charge $4,950.00 in June & July, consisting primarily dealing with Z&F's attorneys fees, and another $5,535.00 in August, primarily working on its fee application. SRM incurred 32.5 hours of time ($12,837.50) primarily relating to

research and preparation of the fee applications for the Receiver and Z&F (total hours of 42.8 less 6.3 hours in April and early May regarding Bankruptcy Issues and 3.2 hours between July 20 and July 24 regarding the return of the Tenant Security Funds).

27.    The Application states that Z&F incurred fees because the Debtor did not advise the Receiver of the Chapter 11 filing without identifying what those increased fees amount to. However, this statement is rather curious. SRM identifies conversations with the Receiver and Fellenbaum commencing on April 30 the day before Fellenbaum contends he was aware of the April 30 filing and which purportedly resulted in the confusion set forth in Paragraphs 24 through 26 of the Application. SRM identifies the subject matter of his discussions to be on an issue of "Bankruptcy Filing in case where he is the Receiver". (Exhibit G Application SRM Bills).

28.    This hyperbole is consistent with the exaggerated claims made by Z&F throughout the Application concerning Z&F services, their purported value to the estate and the purported obstructions by the Debtor.

## THE LAW

29    Section 543 of the Bankruptcy Code provides for the "protection" of a "custodian," and for "reasonable compensation" for services rendered by such custodian. Section 503(b)(4) of the Bankruptcy Code provides for reasonable compensation to an attorney for a pre-Petitions Custodian based "on the time, the nature, the extent, and the value of such services ..." (emphasis supplied).

30.    The burden is upon the Administrative Claimant to establish an entitlement to an Administrative Expense In re: Sevitski, 161 B.R. 847, 856 (Bkrtcy. N.D. Okla. 1993). A general write down of time is appropriate where the Applicant wasted too much time and based on the result

or the lack of result of the Applicant's efforts at 856.

31. Z&F rendered very little benefit to the Receivership. It's activities were ineffectual and did not result in any concrete change or effect. Z&F only rendered services when it appeared to benefit Z&F personally such as the contempt Motion where the billings aggregated $13,600.00. Z&F provided services regarding the appointment of a Receiver aggregating approximately 3.5 hours, engaged in contact with the Debtor of approximately 7.2 hours and rendered "legal" services of 37.4 hours. These pre-Petition services aggregate only $21,645.00. Significant discounts should be taken for the work rendered in connection with the Amended Order and Management Contract and extensive Conferencing that took place which should be reduced by at least 50%.

32. Finally, Z&F's post-Petition services should be reduced significantly leaving Z&F with a $5,000,00 post -Petition fee at best. Moreover, SRM should be reduced to $3,500,00.

**WHEREFORE,** it is respectfully requested that the Court approve and deny the accounting as set forth above, and grant such other and further relief as may be proper.

Dated: New York, New York
      September 7, 2009

                    Respectfully submitted,

                    s/Leo Fox
                        LEO FOX (LF-1947)
                    Attorney for Debtor
                    630 Third Avenue, 18th Fl.
                    New York, NY 10017
                    212-867-9595





McCARTER
&ENGLISH
ATTORNEYS AT LAW

May 18, 2009

**VIA OVERNIGHT MAIL**

Honorable Elizabeth S. Stong, U.S.B.J.
Eastern District of New York
271 Cadman Plaza East
Suite 1595
Brooklyn, NY 11201-1800

Joseph Lubertazzi, Jr.
Partner
T. 973.639.2082
F. 973.297.3940
jlubertazzi@mccarter.com

**Re: In re South Side House LLC, Case No. 09-43576 (ESS)**

Dear Judge Stong:

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
· ··· ·····

This Firm represents Bank of America, as Trustee (the "Lender"), in the above-referenced matter. Enclosed please find a courtesy copy of the Lender's Objection to the Debtor's Motion for use of cash collateral, which Motion is scheduled for hearing before Your Honor on May 21, 2009, at 11:30 a.m.

The Debtor has been ordered by this Court to provide certain discovery to the Lender by tomorrow, May 19, 2009. We anticipate filing a brief supplement to our Objection on May 20, 2009, based on the discovery provided by the Debtor.

Respectfully submitted,

Joseph Lubertazzi, Jr.

cc: Leo Fox, Esq.
Phillip Byler, Esq.
Diana G. Adams, U.S. Trustee
(via overnight mail w/ encl.)

PHILADELPHIA

STAMFORD

WILMINGTON

## SCHEDULE A

The Debtor's indebtedness to the Lender under the Loan Documents as of the Petition Date, April 30, 2009, was at least **$36,958,500.79**, calculated as set forth below. Other sums, including, but not limited to, late fees and attorneys' fees and costs are due under the Loan Documents. Interest is accruing as set forth in the Loan Documents. In addition, the Lender reserves the right to claim that the Debtor is liable to pay for expenses incurred but not paid by the Receiver, and for additional property protection advances.

**Amounts Owed**

| | | |
|---|---|---:|
| Principal balance | $ | 29,000,000.00 |
| Accrued interest from October 10, 2008 through April 30, 2009 | $ | 911,667.36 |
| Accrued default interest from October 11, 2008 through April 30, 2009 | $ | 813,611.11 |
| Prepayment Consideration | $ | 5,954,395.26 |
| Special Servicer Property Protection Advances (see Schedule B) | $ | 173,465.03 |
| Master Servicer Property Protection Advances | $ | 1,120.74 |
| Special Servicer Fee | $ | 290,000.00 |

**Less Credits**

| | | |
|---|---|---:|
| Tax Escrow Balance | $ | (6,097.31) |
| Insurance Escrow Balance | $ | (3,694.47) |
| Suspense Escrow Balance | $ | (175,966.93) |
| **TOTAL** | $ | 36,958,500.79 |

# SCHEDULE B

## SPECIAL SERVICER PROPERTY PROTECTION ADVANCES

| | | |
|---|---|---|
| Legal Fees | $ | 53,262.28 |
| Property Insurance | $ | 116,702.75 |
| Environmental Report | $ | 3,500.00 |
| TOTAL | $ | 173,465.03 |

NEAL FELLENBAUM*
JEFFREY H. ZEGEN

OF COUNSEL
GERALD KADISH*
BALRAM KAKKAR**

*ALSO MEMBER OF N.J. AND PA. BARS
*MEMBER OF N.J. BAR ONLY
*MEMBER OF N.Y. AND N.J. BARS
*ALSO MEMBER OF D.C. BAR
**ALSO MEMBER OF CONN. AND D.C. BARS

## ZEGEN & FELLENBAUM

ATTORNEYS AT LAW
144 EAST 44TH STREET
SIXTH FLOOR
NEW YORK, N. Y. 10017

TELEPHONE: (212) 986-4848

FAX NO: (212) 808-9808
nfellenbaum@zfny.com
www.zfny.com

NEW JERSEY OFFICE:
26 MAIN STREET
HACKENSACK, N. J. 07601-7032
TELEPHONE: (201) 342-1800

OF COUNSEL
ROBERT J. KLEEBLATT*
RICHARD P. GALLER*
RONALD M. ABRAMSON*

March 11, 2009

Federal Express
no: 8641 9920 9302

Michael Cohen, Esq.
Tenenbaum & Berger, LLP
26 Court Street
24th Floor
Brooklyn, New York 11242

      Re:    Bank of America v. South Side House LLC et al, USDC, EDNY; Case no. 1:09-cv-00411- BMC; Arnold Spiegel, Esq., As Receiver for 98-104 South 4th Street, Brooklyn, New York

Dear Mr. Cohen:

We represent Arnold Spiegel, Esq., the Receiver of 98-104 South 4th Street, Brooklyn, New York (the "Property"), in the above captioned matter. A copy of the February 11, 2009 Order of Hon. Brian M. Cogan, USDJ (the "Order") appointing the Receiver appears at entry no. 12 on the ECF docket. Mr. Spiegel took possession of, and commenced operation of, the Property as Receiver on February 23, 2009 when he filed his oath and bond. See, entry no. 17 on the ECF docket.

As you are also aware, at a February 10, 2009 hearing, Judge Cogan issued a Temporary Restraining Order (the "TRO") (a) enjoining defendants South Side House LLC ("South Side"), Israel Perlmutter and Menachem Stark ("Stark") (collectively, the "South Side defendants") from seeking to collect or collecting any rents and (b) with respect to rents they might receive, directing that said defendants deposit those funds into a new bank account, and provide plaintiff's counsel "with the location and number of that account." See, attached transcript of the hearing, page 10, line 21 – page 11, line 1.

We are informed by the Receiver's managing agent for the Property, Stonehenge Management LLC ("Stonehenge"), that it has demanded that the South Side defendants, immediately turn over to them (1) all rent monies they may have received on or after February 10, 2009, and (2) all books and records, rent security deposits, etc., as directed by the Order. See,

ZEGEN & FELLENBAUM

Michael Cohen, Esq.
March 11, 2009
Page 2

pages 3, 4 and 5 of the Order. As more fully set forth below, inasmuch as your clients have acted in violation of the TRO and Order, **PLEASE TAKE NOTICE** that unless the items set forth below are provided to the Receiver or Stonehenge within five (5) days of receipt of this letter, we will apply to Judge Cogan for appropriate relief, including an order of contempt against your clients.

Below is a list of items not received from the South Side defendants that must be produced within five (5) days of receipt of this letter.

A.    **Monies to be turned over:**

1.    Rent security deposit funds.

2.    Monies on deposit in any operating account.

3.    All rents received by the South Side defendants on or after February 10, 2009.

4.    Rents prepaid by tenants for rental periods after February 9, 2009:

(a)    Wes Richardson, Apt. 4J: This tenant, who is vacating the apartment on March 31, 2009, claims that he paid South Side $6,999.00 for the first and last months of the lease term before the lease began on March 1, 2008, and that he also paid South Side one month's rent security. Your clients' ledger confirms that the tenant paid them each month of the lease term and that they were paid for March 2009 rent. Accordingly, the South Side defendants must pay to the Receiver the $3,500 they received for March 2009 rent and $3,500 they purportedly received for rent security.

(b)    Poala Suhonen, Apt. 6F: This tenant has provided proof that on or about September 9, 2008 she wired (from Finland) to your clients the sum of $16,300, which she asserts represents five (5) months advance rent, plus one month of security. She further alleges that since inception of the lease, she has paid your clients her monthly rent of $2,800 by wire transfer each month, including the payment for March, 2009. Thus, she now asserts that the initial pre-paid wire transfer should be applied to pay the balance of her rent due for her remaining lease term. The tenant also alleges that you are holding one month's payment as rent security. Therefore, the South Side defendants must pay to the Receiver $14,000, representing five (5) months of prepaid rent, and $2,800 they purportedly received for rent security.

ZEGEN & FELLENBAUM

Michael Cohen, Esq.
March 11, 2009
Page 3

    (c)    <u>Christina Read, Apt. 4D</u>: This tenant asserts she was shown this apartment by Stark during the first week of March, 2009, and then signed a lease with South Side, in violation of the TRO and Order. (She has signed a new lease with the Receiver.) The tenant provided us with a copy of that improper lease as well as a $600 bank money order made payable to "Hilly Porges." Upon information and belief, Mr. Porges is an employee of South Side or South Side's wholly owned managing agent, Greenpoint Management. The tenant alleges that when she executed the improper lease with South Side, she gave your clients bank money orders in excess of $9,000 and that she has stopped payment on them. Thus, the South Side defendants must pay to the Receiver the $600 paid to Mr. Porges. Moreover, if the South Side defendants have received the proceeds of said $9,000+ funds that the tenant paid to them in connection with the improper lease, they must pay said funds to the Receiver.

    The above list of tenants with similar claims will be supplemented as needed.

**B.**    <u>Documents and keys to be turned over:</u>

    1.    Rent security records, including the account number(s) and identity of the banks where rent security funds are maintained.

    2.    Lease files and leases for apartments 2A, 2K and 7H.

    3.    Current leases for apartments 3J, 4B, 4E, 5B, 5D, 6A, 6B, 6C and 7J.

    4.    Key codes for all locks in the building. (The building's locks are manufactured by the Multilock brand and require codes to make duplicate keys. Stonehenge requires (a) copies keys for the bottom lock of each residential unit to comply with building codes, and (b) copies of keys for entrance doors, storage and boiler rooms, etc.)

    5.    The master Multilock coded key in South Side's possession. (Stonehenge advises that this key will open any door at the Property.)

    6.    Copies of financial statements for the Property, e.g., income statements, balance sheets, etc.

ZEGEN & FELLENBAUM

Michael Cohen, Esq.
March 11, 2009
Page 4

7.    Copies of all service and installation contracts related to the Property, e.g., elevator, pest control, heating, boiler, plumbing, sprinklers, windows, intercom, security cameras, etc., including all warranties provided by any vendor or service provider in connection with these items.

8.    Copies of all construction contracts for any construction work done at the building including warranties for such work.

9.    Detailed summary of landlord-tenant proceedings which South Side may have commenced, or which may have been commenced against South Side, including copies of all legal papers filed in landlord-tenant court in connection with such proceedings (e.g., petition, answer, stipulations for payment of arrears), etc.

10.   List of equipment and inventory of supplies on hand for the Property.

11.   Accounts receivable ledger.

12.   Accounts payable ledger.

13.   General ledger.

14.   Any and all plans filed with the New York City Buildings Department, including architects' blueprints and drawings for the two partially constructed spaces intended for commercial tenants.

To reiterate, **PLEASE TAKE NOTICE** of our intent to apply to Judge Cogan for appropriate relief, including an order of contempt, if the above items are not supplied to Stonehenge or the Receiver, as the case may be, within five (5) days of receipt of this letter.

Please be guided accordingly.

Very truly yours,

Neal Fellenbaum

NF:gb

cc:    Arnold Spiegel, Esq.
       Receiver

Michael Cohen, Esq.
March 11, 2009
Page 5

Joseph Lubertazzi, Esq.
Peter Knob, Esq.
McCarter & English, LLP

Steve Vissichelli, CEO
Andrew Hoffman, COO
Stonehenge Management, LLC

NEAL FELLENBAUM*
JEFFREY H. ZEGEN

OF COUNSEL
GERALD KADISH*
BALRAM KAKKAR**

*ALSO MEMBER OF N.J. AND PA. BARS
**MEMBER OF N.J. BAR ONLY
*MEMBER OF N.Y. AND N.J. BARS
*ALSO MEMBER OF D.C. BAR
**ALSO MEMBER OF CONN. AND D.C. BARS

## ZEGEN & FELLENBAUM

ATTORNEYS AT LAW
144 EAST 44TH STREET
SIXTH FLOOR
NEW YORK, N.Y. 10017

TELEPHONE: (212) 986-4848

FAX NO: (212) 808-9808
nfellenbaum@zfny.com
www.zfny.com

NEW JERSEY OFFICE:
25 MAIN STREET
HACKENSACK, N. J. 07601-7032
TELEPHONE: (201) 342-1800

OF COUNSEL
ROBERT J. KLEEBLATT*
RICHARD P. GALLER*
RONALD M. ABRAMSON*

March 13, 2009

<u>Via ECF Filing</u>

Hon. Brian M. Cogan, USDJ
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  Bank of America v. South Side House LLC et al, USDC, EDNY; Case no. 1:09-cv-00411- BMC.

Dear Judge Cogan:

We represent Arnold Spiegel, Esq., appointed by Your Honor to be Receiver of the property at 98-104 South 4th Street, Brooklyn, New York, also known as the "Rocket Lofts."

With respect to the status conference scheduled by Your Honor for Monday, March 16, 2009, 11:00 AM, we respectfully submit a copy of a letter we sent on March 11, 2009 to Michael Cohen, Esq. of Tenenbaum & Berger, LLP, attorneys for the defendants. A copy of this letter with Federal Express proof of delivery is annexed as Exhibit "A."

In said letter, we demanded that the defendants turn over to the Receiver within five (5) days of its receipt items required to be immediately delivered to the Receiver pursuant to this Court's bench Temporary Restraining Order of February 10, 2009, and Order Appointing A Rent Receiver dated February 11, 2009 (entry no. 12 on the ECF docket). A copy of the transcript of the February 10, 2009 hearing is annexed hereto as Exhibit "B."

We had anticipated filing on Wednesday, March 18 a letter requesting a pre-motion conference for permission to file a motion for contempt against the defendants for their failure to comply with said orders and to cooperate with the Receiver, but inasmuch as the Court has set down a status conference for this Monday, we believe it is appropriate to bring up defendants' disobedience of the Court's orders now.

ZEGEN & FELLENBAUM

Hon. Brian M. Cogan, USDJ
March 13, 2009
Page 2

As more fully set forth in our letter to Mr. Cohen, among many other things, defendants have failed to turn over to the Receiver (a) rent security deposits and rent security records; (b) monies on deposit in any operating account; (c) many lease files, leases and other vital building records; (d) key codes for all locks to the building; and (e) the master key which opens every lock in the building. (Yesterday, defendant Menachem "Max" Stark ("Stark") told the Receiver and Andrew Hoffman, Chief Operating Officer of the Receiver's managing agent, Stonehenge Management LLC ("Stonehenge"), that he would not surrender that key.)

Moreover, we informed Mr. Cohen that a new tenant in the building advised Stonehenge that well after the orders were issued, Stark showed her an apartment, had her sign an improper lease with South Side, took what appeared to be a $600 deposit on the apartment, and then had her give $9,000+ in bank money orders as advance rental payments for the improper lease. Copies of the $600 money order and improper lease are annexed hereto as Exhibits "C" and "D" respectively. (The tenant further informed Stonehenge that she had stopped payment on the money orders and is waiting for her bank to provide documentation of this. The tenant has signed a new lease with the Receiver.)

Accordingly, we respectfully request that at Monday's status conference, the Court review the defendants' non-compliance with its orders, which is hampering the Receiver's operation of the building.

Respectfully submitted,

Neal Fellenbaum
(NF-6272)

NF:gb

cc:    All counsel via ECF filing



NEAL FELLENBAUM*
JEFFREY H. ZEGEN

OF COUNSEL
GERALD KADISH*
BALRAM KAKKAR**

*ALSO MEMBER OF N.J. AND PA. BARS
**MEMBER OF N.J. BAR ONLY
*MEMBER OF N.Y. AND N.J. BARS
*ALSO MEMBER OF D.C. BAR
**ALSO MEMBER OF CONN. AND D.C. BARS

# ZEGEN & FELLENBAUM

ATTORNEYS AT LAW
144 EAST 44TH STREET
SIXTH FLOOR
NEW YORK, N.Y. 10017

TELEPHONE: (212) 986-4848

FAX NO: (212) 808-9808

nfellenbaum@zfny.com
www.zfny.com

NEW JERSEY OFFICE:
25 MAIN STREET
HACKENSACK, N.J. 07601-7032
TELEPHONE: (201) 342-1800

OF COUNSEL
ROBERT J. KLEEBLATT*
RICHARD P. GALLER*
RONALD M. ABRAMSON*

March 20, 2009

Via ECF Filing

Hon. Brian M. Cogan, USDJ
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: Bank of America v. South Side House LLC et al, USDC, EDNY; Case no. 1:09-cv-00411- BMC

Dear Judge Cogan:

We represent Arnold Spiegel, Esq., the Receiver of the property at 98-104 South 4th Street, Brooklyn, New York (the "Property") in the above captioned matter.

We respectfully request that the contempt hearing scheduled for Monday, March 23, 2:15 PM, be adjourned *sine die*.

Yesterday, we had a conference call with the defendants and their counsel, the Receiver, and officers of his managing agent, Stonehenge Management LLC ("Stonehenge") to discuss our letter of March 11, 2009 to defendants (the "demand letter"), in which we demanded that they turn over to the Receiver various monies, documents and keys. See, Attachment # 1 to entry no. 20 on the ECF docket.

As a result of the conference call, today the defendants delivered to us the following checks payable to the order of the Receiver:

1. $197,466.00, which defendants represent are the rent security deposits they have had on hand. It was agreed by the parties that this sum shall be adjusted upon further review of the lease records by the Receiver and Stonehenge. Defendants agreed to pay to the Receiver any additional sums which are found to be owing by them for rent security.

2.    $24,969.21, which defendants represent are the funds in the operating account for the Property.

3.    $600.00, representing a bank money order of the same amount given by Cristina Read, the new tenant of apartment 4D, to the defendants.

The defendants also delivered to us the master key for the Property. Since defendants advised that this master key also provides access to other buildings owned by them, the Receiver and Stonehenge have represented that they will not use this key to gain access to any other premises owned or operated by the defendants.

With respect to the other requirements set forth in the demand letter, defendants have agreed to review their files further and report back to the Receiver, Stonehenge and the undersigned by next Thursday, March 26. The defendants and their counsel have represented that they will participate in another conference call at 3:00 PM that day to discuss the results of their review and to see how the remaining demands of the Receiver and Stonehenge can be satisfied.

We will keep Your Honor informed as developments warrant.

Respectfully submitted,

Neal Fellenbaum
(NF-6272)

NF:gb

cc:    All counsel via ECF
       (w/ enclosures - copies of checks)

## ZEGEN & FELLENBAUM

NEAL FELLENBAUM*
JEFFREY H. ZEGEN

OF COUNSEL
GERALD KADISH*
BALRAM KAKKAR**

*ALSO MEMBER OF N.J. AND PA. BARS
*MEMBER OF N.J. BAR ONLY
**MEMBER OF N.Y. AND FLA. BARS
*ALSO MEMBER OF D.C. BAR
**ALSO MEMBER OF CONN. AND D.C. BARS

ATTORNEYS AT LAW
144 EAST 44TH STREET
SIXTH FLOOR
NEW YORK, N. Y. 10017

TELEPHONE: (212) 986-4848

FAX NO: (212) 808-9808
nfellenbaum@zfny.com
www.zfny.com

NEW JERSEY OFFICE:
25 MAIN STREET
HACKENSACK, N. J. 07801-7032
TELEPHONE: (201) 342-1800

OF COUNSEL
ROBERT J. KLEEBLATT*
RICHARD P. GALLER*
RONALD M. ABRAMSON*

May 4, 2009

By E-mail

Joseph Lubertazzi, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark , NJ 07102

Re:   *In re South Side House LLC, Debtor*; USBC, EDNY, case no: 1-09-43576-ess;
Hearing scheduled for tomorrow, May 5, 2009, 9:30 AM before Judge Stong

Dear Mr. Lubertazzi:

We represent Arnold Spiegel, Esq., as United States District Court Receiver (the
"Receiver"), appointed pursuant to the Order of Hon. Brian M. Cogan, United States District
Judge for the Eastern District of New York, in the matter entitled *Bank of America v. South Side
House LLC, et al.*, case no. 1:09-cv-411.

Under Section 543 of the Bankruptcy Code, the Receiver is required to transfer the
property, assets and records of the debtor that are in his possession as Receiver (the "Assets") to
the above-referenced Debtor. In some cases, the Bankruptcy Court may find it advisable to
modify this transfer, e.g., appoint the Receiver as a Bankruptcy Custodian under Section 543(d)
of the Bankruptcy Code. If you are considering asking the Bankruptcy Court for this or similar
relief, please contact me to discuss same.

To assure an orderly transfer of the Assets to the Debtor, and absent an order of the
Bankruptcy Court otherwise, I would like to schedule a meeting later this week with you, the
Receiver, and the Receiver's managing agent, Stonehenge Management LLC.   I suggest
Thursday morning, May 7, as a time to meet inasmuch as I will be engaged in a preliminary
injunction hearing in the Commercial Division of the Supreme Court of the State of New York,
New York County on Wednesday.

In the absence of a meeting or an order of the Bankruptcy Court directing the Receiver to
act differently, on Friday, May 8, 2009, the Receiver intends to turn over the Assets to Debtor.



ZEGEN & FELLENBAUM

Joseph Lubertazzi, Jr.
McCarter & English, LLP
May 4, 2009
Page 2

Please call me as soon as possible.

Very truly yours,

Neal Fellenbaum
(NF-6272)

NF:gb

cc:    Via ECF filing

       Honorable Brian M. Cogan
       United States District Judge
       United States District Court
       Eastern District of New York

       Via ECF filing and Fax: 347-394-1865

       Honorable Elizabeth S. Stong
       United States Bankruptcy Judge
       United States Bankruptcy Court
       Eastern District of New York

       Via ECF filing

       Leo Fox, Esq.
       Counsel for the Debtor

## ZEGEN & FELLENBAUM

NEAL FELLENBAUM*
JEFFREY H. ZEGEN

OF COUNSEL
GERALD KADISH*
BALRAM KAKKAR**

*ALSO MEMBER OF N.J. AND PA. BARS
**MEMBER OF N.J. BAR ONLY
*MEMBER OF N.Y. AND N.J. BARS
*ALSO MEMBER OF D.C. BAR
**ALSO MEMBER OF CONN. AND D.C. BARS

ATTORNEYS AT LAW
144 EAST 44TH STREET
SIXTH FLOOR
NEW YORK, N. Y. 10017

TELEPHONE: (212) 900-4848

FAX NO: (212) 808-8808

nfellenbaum@zfny.com
www.zfny.com

NEW JERSEY OFFICE:
25 MAIN STREET
HACKENSACK, N. J. 07601-7032
TELEPHONE: (201) 342-1800

OF COUNSEL
ROBERT J. KLEEBLATT*
RICHARD P. GALLER*
RONALD M. ABRAMSON*

June 4, 2009

Via ECF Filing
and Fax: 347-394-1865

Hon. Elizabeth S. Stong
United States Bankruptcy Judge
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201-1800

     Re:    *In re South Side House LLC, Debtor*, USBC, EDNY, case no: 1-09-43576-ess.

Dear Judge Stong:

    We represent Arnold Spiegel, Esq., as United States District Court Receiver (the "Receiver"), appointed pursuant to the Order of Hon. Brian M. Cogan, United States District Judge for the Eastern District of New York, in the matter entitled *Bank of America v. South Side House LLC, et al.*, case no. 1:09-cv-411.

    At the May 21, 2009 hearing before Your Honor, the Receiver advised the Court that he would be able to able to file his accounting by tomorrow June 5. For the reasons set forth below, the Receiver is unable to do so, and respectfully requests that Your Honor permit him to file said accounting by Friday, June 26. The reasons for this request are as follows:

    1.    Yesterday afternoon, Fred B. Ringel, Esq. of Robinson Brog Leinwand Greene Genovese & Gluck P.C., bankruptcy counsel for the Receiver's pre-petition managing agent, Stonehenge Management LLC ("Stonehenge"), informed the Receiver and me that its accounting - which will primarily comprise the Receiver's accounting - will not be finalized until tomorrow, and it will not be filed with the Court until perhaps tomorrow night.

    2.    The Receiver and I are in the process of retaining bankruptcy counsel to handle our forthcoming applications for commissions and legal fees.

3.    As I have informed your courtroom deputy, Ms. Sheree Jackson, I have been out of the office since the end of last week with the flu. Today is my first full day this week in my office.

Respectfully submitted

Neal Fellenbaum
NF-6272

NF:gb
cc: all counsel via ECF

*Counsel is directed to seek the consent of the Debtor and the United States Trustee for the requested extension and to advise the Court of the parties' positions by June 8, 2009. It is so ordered.*
*S/Elizabeth S. Stong*
*Brooklyn, NY*
*June 5, 2009*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

Chapter 11

------------------------------------------------------------X   Case No. 09-43576 (ess)

IN RE:

    SOUTH SIDE HOUSE, LLC,

                         Debtor.        **AFFIRMATION OF SERVICE**

------------------------------------------------------------X

       **LEO FOX**, affirms under penalty of perjury as follows:

       On August 7, 2009 I served the within **OPPOSITION OF DEBTOR TO RECEIVER'S**

**ATTORNEYS FEES AND RECEIVER'S ATTORNEYS ATTORNEYS FEES** by Fax to each

of the persons identified below:

Valerie Millman, Esq.
Office of the United States Trustee
Eastern District of New York
271 Cadman Plaza East, Suite 4529
Brooklyn, NY 11201
Fax:  (718) 422-4990

Joseph Lubertazzi, Jr., Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Fax:  (973) 297-3940

Zegen & Fellenbaum
144 East 44th Street
New York, New York 10017
(212) 808-9808

Stein Riso Mantel, LLP
Bankruptcy Counsel for the Superseded Receiver
The Chrysler Building, 42nd Floor
405 Lexington Avenue
New York, New York 10174
Fax: (212) 599-6155

Affirmed: New York, New York
September 7, 2009

s/Leo Fox
LEO FOX

H:\Reception_mydocs\SouthSide\AOS - 9-7-09.wpd