# EXHIBIT B

## Proposed Management Agreement

1929379.3

# MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT (hereinafter referred to as the "Agreement") is made as of the 27th day of January, 2014 between **Jonathan L. Flaxer, solely in his capacity as Chapter 11 Trustee for South Side House, LLC**, a __New York__ Limited Liability Company, c/o **Golenbock, Eiseman, Assor, Bell & Peskoe, LLP (Owner)**, having its offices at 437 Madison Avenue, New York, New York 10022 ("Trustee") and **PRC MANAGEMENT CORPORATION**, a Delaware corporation having its principal office at 240 Madison Avenue, 9th Floor, New York, New York 10016 ("Manager"). Capitalized terms used in this Agreement and not specifically defined herein shall have the meanings assigned to them in the Operating Agreement (defined below).

**WITNESSETH**

WHEREAS, Owner is the owner of a certain property located at, 98-116 South 4th Street, Brooklyn, New York 11249 (the "Property");

WHEREAS, Owner is the subject of a case under Chapter 11 of Title 11 of the United States Bankruptcy Code "The Bankruptcy Code" pending in the U.S. Bankruptcy Court for the Eastern District of New York "The Bankruptcy Court" as case number 09-43576.

WHEREAS, Trustee is the duly appointed Chapter 11 Trustee for Owner.

WHEREAS, Trustee wishes to hire and engage Manager to operate, manage and otherwise attend to the Property upon the terms and conditions hereinafter set forth and Manager desires to provide such services upon such terms and conditions;

NOW THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Owner and Manager hereby agree as follows:

Article 1

## Engagement of Manager

1. Trustee hereby appoints Manager as exclusive managing agent for the Property. Manager shall have the duties of maintaining, servicing, repairing, managing, and operating the Property in accordance with this Agreement. The oversight of leasing of the property shall be performed by Manager, utilizing independent contractors, who will be responsible for the leasing of residential apartments and/or commercial units.

Article 2

## Manager Independent Contractor; Employees

2. A. This Agreement is one of agency by Manager for Owner, provided that the parties acknowledge that Manager is not the employee of Owner but is engaged in the business of managing properties as an independent contractor.

B.     At the request of Trustee, Manager will retain all of the current building maintenance employees employed at the Property and place them on Manager's payroll, effective the commencement date of this Agreement. Manager, conjunction with the Trustee, will ensure that it shall have in its employ at all times a sufficient number of capable building maintenance employees (including but not limited to concierge, porters, handymen, doormen, and superintendent) to enable Manager to properly, safely and economically manage, operate, maintain and account for the Property. All matters pertaining to the employment, compensation, promotion and discharge of such employees (including the provision of such fringe benefits as shall be required by any labor union representing such employees, or, if any employees are not represented by a labor union) shall be the at the sole cost and expense of Owner. Owner shall reimburse Manager for all actual costs arising from its employment of the aforementioned building maintenance employees, including, but not limited to their compensation, as well as any costs or liability arising from their negligence or willful misconduct. All matters of the day-to-day supervision of such employees shall be the responsibility of Manager. Manager shall fully comply with all applicable laws and regulations relating to workmen's compensation, social security, unemployment insurance, hours of labor, wages, working conditions and other employer-employee related subjects. Manager represents that it is and will continue to be an equal opportunity employer. Upon the termination of this Agreement pursuant to Article 9 herein, Manager's responsibility to employ the building maintenance employees will cease, and their employment shall revert to Owner or Owner's designee.

**Article 3**

## Duties and Covenants of Manager

3.     A. Manager shall perform all services with respect to the Property as are customary in the industry, including but not limited to preparing a management plan, ordering supplies for the Property, setting up the management office at the Property (if applicable) and coordinating move-in schedules for new tenants with the rental agent and the clean-up and preparation of apartments required thereby.

B.     Manager shall use its best efforts to collect all rents, including escalation billings resulting from tenant liability for increase in expenses, real estate taxes or water charges, and other charges which may become due at any time from any tenant in connection with, or for the use of, the Property or any portion thereof. Manager may institute suit, actions or proceedings against defaulting tenants, whether for non-payment of rent under a lease or otherwise. Manager shall be entitled to settle any such suit, action or proceeding (or any other lease dispute), provided that the amount in dispute does not exceed $2,000, and Manager shall not settle any such suit, action or proceeding (or any other lease dispute) in excess of $2,000 without the prior written consent of Trustee. Except as provided hereinabove in this Section 3(B), Manager shall not forgive any income due and unpaid under a lease, or otherwise, without the prior written approval of Trustee.

C.     Manager will also, as part of the statements provided to Trustee pursuant to Article 8 hereof, advise Trustee as to the status of all receivables. All monies collected pursuant to this Agreement shall be deposited in the Operating Account (as defined in Article 7 hereof).

D.     Manager will coordinate tenant complaints and otherwise promote good tenant relations. Manager shall hold all of the instruments, contracts, agreements, licenses,

permits, approvals, books and records, files and other documents, and the personal property it may receive which in any way relates to the Property, for and on behalf of the Trustee, all of which shall be and remain the property of Owner and shall be available to the Trustee and his representatives for inspection at any time during regular business hours on reasonable prior advance notice to Manager.

E.  Manager shall:

1.  Invoice the tenants for all charges and payments required to be made under the leases for the next month.

2.  Pay the following expenses, subject to the approval of the Bankruptcy Court, directly from the Operating Account (without Manager's mark-up or administrative costs of any kind), subject to the conditions of this Agreement:

(a)  Costs to correct any violation of federal, state and municipal laws, ordinances, regulations and orders relative to the leasing, use, repair and maintenance of the Property, or relative to the rules, regulations or orders of the local Board of Fire Underwriters or other similar body, provided such costs are not the result of Manager's, fraud, willful misrepresentation, gross negligence or willful misconduct;

(b)  Actual and reasonable costs of making all repairs, decorations and alterations, provided such costs are not the result of Manager's, fraud, willful misrepresentation, gross negligence or willful misconduct;

(c)  Costs incurred by Manager resulting from suits for the collection of rents;

(d)  Costs of collection of delinquent rents collected through an attorney or collection agency;

(e)  Costs of capital expenditures subject to the restrictions of this Agreement;

(f)  Costs of the processing of checks for each bank account being maintained for the Property and other commercially reasonable bank charges as approved by Owner;

(g)  Cost of printed forms, copies, software licenses, supplies and telephone charges required for use by the Property, or Manager's management operations for the Property;

(h)  Costs incurred in connection with service contacts;

(i)  Costs incurred for utilities, which are the responsibility of Owner;

(j)  All payroll and payroll related fees and expenses, including fringe benefits (as may be required by any labor union representing the employees, or as may be agreed to by Owner with respect to any employees who are not represented by a labor union) and bonuses in commercially reasonable amounts, for on-site building staff, including the superintendent, porters, handymen, doormen and concierge, provided that any such fringe benefits and bonuses shall be recommended by Manager and approved in writing by Owner prior to payment;

(k)  Mailing (regular and overnight), copying and messenger fees;

    (l)    Real Estate or other State, Federal or Local Taxes; and

    (m)    Management fees.

3.    Pay from funds contained in the Operating Account, on behalf of Owner, premiums on insurance policies as required, provided that the Operating Account contains sufficient sums to pay the premiums therefor and that the Trustee furnishes Manager with the bills with respect thereto, if required. Manager shall notify Trustee ten (10) days before any insurance payment is due whether sufficient funds are contained in the Operating Account. Owner shall retain responsibility for ensuring continued adequate insurance coverage. Owner's liability insurance policy shall name Manager as an additional insured.

4.    Upon vacancy of each unit, ensure that the unit is immediately prepared for re-rental by causing such work as painting, plastering, floor refinishing and other work, as required, to be done. Costs for such work shall be for the account of Owner.

5.    Intentionally omitted.

6.    Perform continually and consistently its obligations under this Agreement to manage and operate the Property as would a first-class property manager with extensive experience in the management of properties containing a combination of high-rise market rate residential apartment units, retail space and office space located in Brooklyn.

7.    Operate, manage and maintain the Property as a residential apartment house complex. As such, Manager agrees:

    (a)    To comply with all applicable legal requirements as set forth in the requirements of New York City's 421-a real property tax abatement program;

    (b)    To cause the Property to comply with all other statutes, regulations and agreements which are required to be complied with in order for Owner to obtain the Credit with respect to units in the Property;

    (c)    After consultation with Trustee, to use its best efforts to correct any noncompliance with any of the foregoing obligations; provided that Manager shall not have any liability for the acts of Owner, any rental agents or other third parties not under the supervision of Manager; and

Manager shall cooperate with Owner to comply with and enforce any requirements of the Owner's lenders relating to the management and operation of the Property.

8.    Assist the Trustee in the preparation of any reports required by the Office of the United States Trustee or the Bankruptcy Court.

9.    Manager shall promptly review all books and records it receives from Owner and/or prior managing agent relating to the property for the six-year period prior to the date hereof and report to the Trustee any missing information, missing documentation or other facts and circumstances that appear to be out of the ordinary or inconsistent with the books and records of a first-class multiple dwelling property.

10.    Not later than ten (10) business days following the approval of this agreement by the Bankruptcy Court, Manager shall provide Trustee with a current rent roll for the Property. Both Trustee and Manager acknowledge that Manager must rely on records that Owner and/or prior managing agent may

have provided to Manager to compile such initial rent roll, and that its accuracy may be limited to the records provided. Notwithstanding the above, Manager will, on a continuous basis use its best efforts to update and correct any inaccuracies in the information it was provided, based upon its day-to-day management of the property, and to update Trustee accordingly.

**Article 4**

# Repairs

4.      Manager shall supervise and make recommendations with respect to all ordinary and emergency repairs. Actual and reasonable expenses for such purposes will be paid by Manager from the Operating Account. Manager shall receive commercially reasonable additional compensation, to be agreed upon by Manager and Trustee, for its services performed under this Article 4 with respect to any emergency repair to the Property the value of which exceeds $500,000.

**Article 5**

# Compliance with Law

5.      A.      Manager shall manage the Property in compliance with all federal, state and local laws, ordinances and regulations relative to the leasing, use, operation, repair and maintenance of the Property and the operations of Manager, including without limitation, laws prohibiting discrimination in housing with respect to re-rentals of Low Income Units (provided that with respect to all other units in the Property, Manager will promptly inform Trustee of any such discrimination known to Manager), employment laws, laws regarding tenant security deposits and laws regarding the storage, release and disposal of hazardous materials (including petroleum products and other toxic substances) ("Environmental Laws"). Notwithstanding the foregoing, Manager assumes no liability whatsoever for violations of any Environmental Law, or any remediation of any such violation, unless such violation directly results from Manager's actions or failure to act, and Trustee shall promptly cure, or cause to be cured, any such violations of Environmental Law to the extent reasonably feasible. Upon obtaining knowledge thereof, Manager shall promptly notify Trustee in writing of any violation of any applicable laws and shall advise Trustee as to any potential violation of any new applicable laws, and, in either case, Manager shall advise Owner of the steps required to cure such violation or future violation, including whether or not such violation or such applicable law, or the application thereof to the Property or Owner, should be contested.

B.      If noncompliance with any law or ordinance and other orders, rules, regulations or requirements of any governmental authority having jurisdiction over the Property will subject Manager to criminal prosecution, and if Owner fails or refuses to comply, or to permit Manager to comply on its behalf therewith, Manager, at its election, may terminate this Agreement upon at least 24 hours prior written notice to Owner. In the event Manager learns of the lapse of any insurance coverage with respect to the Property required under the Operating Agreement, Manager shall immediately notify Owner of such lapse. If, after its receipt of such notification, Owner fails to procure such insurance within 24 hours thereof, Manager may procure such insurance on Owner's behalf, in which event Owner shall promptly reimburse Manager for the cost thereof upon Owner's receipt of the original insurance policy procured, together with the original receipt for payment.

Article 6
## Service Contracts

Manager, as Owner's agent, will review existing contracts and will negotiate, execute and terminate service agreements with independent contractors furnishing services reasonably required in the operation of the Property. Manager shall execute and terminate such agreements in the name of Manager, as agent for Owner, and each service provider shall acknowledge in each such contract that (a) in executing the contract Manager is acting as the agent of Owner, and (b) in the event Manager ceases to act as the manager for the Property for any reason, the service provider shall continue to perform its obligations under the contract until such contract expires or is otherwise terminated by Owner, it being understood that Manager may not terminate any contracts without the prior approval of the Trustee, and to the extent required by law, the Bankruptcy Court

**Article 7**

## Operating Account

7.    A. Manager shall open an operating account with JP Morgan Chase Bank in the name of Trustee, provided that Manager shall be an authorized signatory with respect thereto (the "Operating Account"), into which Manager shall, promptly upon receipt thereof, deposit all funds collected for the account of Trustee pursuant to this Agreement. Manager shall not commingle the funds in the Operating Account with the funds of any other person or entity. Checks may be drawn upon such Operating Account only by persons authorized by Owner in writing to sign checks. Upon the prior written approval of Trustee, Manager may transfer the Operating Account to another banking institution satisfactory to Trustee. At the Trustee's request, Manager shall transfer monies from the operating account to the account maintained by the Trustee.

B. All tenant security deposits hereafter received shall be maintained in a separate interest bearing account (as required by law). Manager shall receive periodic reports from the bank confirming the status of this account and shall manage this account by depositing all new security deposits therein and withdrawing and disbursing the security deposit for vacating tenants, where appropriate.

C. At the Trustee's request, Manager shall cooperate with Owner to implement any requirements of Owner's lenders relating to the maintenance of accounts at the Property

**Article 8**

## Periodic Statements; Budget

8.    A.    Manager shall establish and keep in order separate and complete statements of all receipts and disbursements made for the account of Trustee and shall, not later than the 25th day of each calendar month, deliver to Trustee, and if requested by Trustee, to Owner's lenders, a detailed accounting reflecting all amounts collected and disbursed during the previous month.

B.    If at any time the gross income of the Property shall not be sufficient to pay the bills and charges which may be incurred with respect to the Property, or if such gross income is insufficient to pay the combined sum of both bills and charges, items will be paid out of the Operating Account in the following order of priority:

(1)    Payroll and payroll related fees (e.g., fringe benefits).

(2)    Utilities.

(3)     Bills and charges of third parties with respect to ongoing maintenance contracts and other contracts which, in the ordinary course of business, are payable in monthly installments.

(4)     Manager's fee and bills, and charges, if any, incurred by Manager for Manager's services to Owner.

(5)     Bills and charges of third parties with respect to nonrecurring matters which are not payable in monthly installments.

C.     After Manager has paid, to the extent of available gross income, all bills and charges based on the ordered priorities set forth above, Manager shall submit to Trustee, and if requested by Trustee, to Owner's lenders, a statement of all remaining unpaid bills. Trustee will, to the extent feasible and legally permissible, provide sufficient monies to pay any unpaid expenses as soon as practical.

D.     Manager shall submit to Trustee, and if requested by Trustee, to Owner's lenders, not later than 15 business days following the approval of this Agreement by the Bankruptcy Court, a proposed budget for Property operations for the fiscal year commencing January 1, 2014. Thereafter, Manager shall submit to Trustee, and if requested by Trustee, to Owner's lenders, not later than November 15 of each year a proposed budget for Property operations for the subsequent fiscal year commencing January 1, which proposed budged may be revised to contain such terms as Owner may require.

## Article 9
### Term of Agreement and Expiration

9.     A.     This Agreement shall commence as of the date hereof and shall continue in full force and effect for five (5) years. Trustee may at any time terminate this Agreement without cause upon not less than (90) days written notice to Manager, and Manager may at any time terminate this Agreement without cause upon not less than (90) days written notice to Trustee.

B.     Upon the termination of this Agreement, Manager shall render to Trustee a final accounting, which shall cover the period from the date of this Agreement to the termination date; provided, however, that if such termination date shall be a date other than the last day of the calendar month, the final accounting shall be prepared to the date of such termination. Termination of this Agreement under any of the provisions of this Agreement shall not release either party as against the other from liability for failure to perform any of its duties or obligations as expressed herein and required to be performed prior to such termination. Upon any such termination, Manager shall forthwith (1) surrender and deliver to Trustee possession of the Property and all rents and income of the Property and other monies of the Property on hand and in any bank account (including, without limitation, all security deposits), (2) deliver to Trustee as received any and all monies due to Owner under this Agreement received after such termination, (3) deliver to Trustee all materials, supplies, keys, contracts, permits approvals, licenses and documents, and such other accounting, papers and records pertaining to this Agreement and belonging to Trustee or which is produced for Trustee hereunder as Owner shall request, (4) deliver to Trustee all computer disks or tapes maintained by Manager, or a duplicate thereof, containing data relating to the Property, other than proprietary or licensed data, and (5) confirm the assignment to Owner of any and all rights Manager may have in and to any existing contracts, licenses and permits relating to the ownership, use, development, repair, operation and maintenance of the Property as Trustee shall require and promptly take all steps necessary to effectuate such assignment; provided, however, that all earned but unpaid fees and other compensation (including, without limitation, reimbursable items) shall be paid to Manager in full not later than the date of such assignment. Manager agrees to cooperate with Trustee or his designee in the transfer of management responsibilities to Trustee or his designee and to take all such actions required in order to effectuate an orderly and systematic ending of Manager's duties and activities

in connection with the Property. Manager hereby grants a power of attorney, coupled with an interest, to Trustee to endorse any checks received in connection with the property, and hereby assigns to Trustee, effective upon the date of the termination of this Agreement, any and all rights Manager may have in and to any existing contracts, licenses and permits relating to the operation and management of the Property which Trustee agrees in writing to accept. The provisions of this Section shall survive the termination of this Agreement.

### Article 10
### Management Fee

10. For Manager's services performed during the first year of Property operations until the termination of this Agreement, Trustee shall pay Manager a monthly fee equal to $8,000, or 2.75% of gross rents collected per month (such gross rents to include rents from residential units, commercial rentals, and any other ancillary fees that Manager is responsible for collecting or administering), whichever is greater. The payment of such fee shall commence effective the execution date of this agreement.

Responsibility for the oversight of apartment leasing shall be included in Manager's duties. However, all direct costs for such oversight of apartment leasing, including compensation to outside contractors and/or brokers will be at Owner's cost and expense. Should Trustee retain Manager to market its commercial space, a separate Brokerage Services Agreement will be negotiated and entered into for such services.

### Article 11
### Insurance

11. A. Manager's Insurance. With respect to its operations of the Property, Manager shall carry, at its expense, (i) worker's compensation insurance for its employees, (ii) Employee theft coverage protecting Manager and Trustee against fraudulent or dishonest acts of Manager's employees, whether acting alone or with others, with limits of liability of not less than $2,000,000, (v) employment practices liability insurance covering Manager's employees to include coverage for acts of abuse, molestation, wrongful dismissal, in an amount not less than One Million Dollars ($1,000,000); (iv) professional liability insurance covering the activities of Manager written on a "claims made" basis, with limits of at least $2,000,000, , and (v) automobile liability insurance covering bodily injury and property damage for all vehicles (including owned, non-owned and hired) in an amount not less than $1,000,000 Combined Single Limit. Any deducible the Manager may carry shall be of industry standard, and the manager's responsibility. Coverage shall be maintained in effect during the period of the Agreement and for not less than two (2) years after termination of the Agreement. Manager shall furnish Trustee, and if requested by Trustee, to Owner's lenders, with certificates evidencing the aforesaid coverages, which shall include provisions to the effect that Trustee will be given at least ten (10) days prior written notice of the cancellation of, or a material change in, any of the aforesaid policies. All insurance companies involved in such insurance shall maintain an A.M. Bests or equivalent rating of not less than A- VIII.

Manager shall cause any sub-operators/sub-managers, independent contractors, contractors or subcontractors to maintain insurance coverages equivalent to those standard in the industry, but in no event less than the primary General Liability and Workers Compensation limits required above. All such contractors must also maintain primary coverage and add Owner & Manager as additional insured.

B.     Owner's Insurance. Owner shall carry, at its expense, adequate insurance against physical damage (e.g., fire with extended coverage endorsements, boiler and machinery) and against liability for loss, damage or injury to the Property or persons which might arise out of the occupancy, management, operation or maintenance of the Property. Any deductible required under such insurance policies shall be at Owner's expense. Manager shall be covered as an additional insured on all liability insurance maintained with respect to the Property. Liability insurance shall be adequate to protect the interests of both Owner and Manager and shall be in form, substance and amounts reasonably satisfactory to Owner and Manager but not less than $1 million per occurrence and $2 million in the aggregate, supplemented by adequate excess liability umbrella coverage. Manager shall be covered as an additional insured on all liability and umbrella insurance maintained with respect to the Property. Said policies shall provide that notice of default or cancellation shall be sent to Manager as well as Trustee and shall require a minimum of thirty (30) days (ten [10] days in the case of cancellation for nonpayment of premiums) actual prior written notice to Manager before any cancellation or non-renewal of said policies. Owner agrees to furnish Manager with certificates evidencing such insurance within ten (10) days of the Bankruptcy Court's approval of this Agreement. If Owner fails to obtain and maintain insurance coverage in accordance with the foregoing, then after notice by the Manager to the Trustee and Owner's failure to cure without any lapse in coverage within ten (10) days, Manager may, but shall not be obligated to, place said insurance meeting the terms described above and charge the cost thereof to the Owner. All such coverage shall be maintained in effect during the period of this Agreement and for not less than two (2) years after termination of this Agreement. All insurance companies involved in such insurance shall maintain an A.M. Bests or equivalent rating of not less than A- VIII.

C.     Waiver of Subrogation. Each of Owner and Manager hereby waives any and all rights of recovery against the other (including its officers, agents, partners and employees occurring out of the ownership, management and operation of the Property) for loss or damage as a result of any casualty covered by their respective insurance policies. Each of the parties shall, upon obtaining the policies of insurance required by this Section, notify the insurance carrier that the foregoing waiver is contained in this Agreement and shall require such carrier to include an appropriate waiver of subrogation provision in such policies.

## Article 12
# Indemnification

12.    A.     Owner's Indemnity. Owner agrees (i) to hold and save Manager free and harmless from damages or injuries to person or property by reason of any cause whatsoever, either in and about the Property or elsewhere, when Manager is carrying out the provisions of this Agreement or acting under the express or implied directions of Trustee, unless such damages or injuries were caused by the gross negligence or willful misconduct of Manager, its employees or agents; (ii) to reimburse Manager for any monies which Manager is required to pay out in connection with any claim, civil or criminal action, proceeding, charge or prosecution (in any event, a "Claim") made, instituted or maintained against Manager, or against Owner and Manager jointly and severally, affecting or due to the condition or use of the Property, or acts or omissions of Manager or employees of Owner or Manager, provided that Owner shall not provide such reimbursement in the event such payment was caused by the gross negligence or willful misconduct of Manager, its employees or agents; (iii) to defend promptly and diligently, at Owner's sole expense, any Claim brought against Manager or Manager and Owner jointly or severally arising out of or connected with any of the foregoing, and to hold harmless and fully indemnify Manager from any judgment, loss or settlement on account thereof, unless such judgment, loss or settlement was caused by the gross negligence or willful misconduct of Manager, its employees or agents; provided, however, that nothing contained in this Section 12(A) shall relieve Manager from responsibility to Owner for Manager's gross negligence, willful misconduct, fraud, breach of this Agreement or actions outside the scope of Manager's authority as set forth herein.

B.  **Manager's Indemnity.** Manager agrees to hold and save Owner free and harmless from liability or damages resulting from Manager's recklessness or gross negligence in carrying out its duties as enumerated herein.

C.  The provisions of this Article 12 shall survive the termination of this Agreement.

### Article 13

### Approval of Management Staff

13. A.  Trustee shall have the right to promptly review and reasonably approve Manager's on-site employees with respect to the Property, and Manager shall remove any such employees from employment at the Property upon the direction of Trustee, such removal to be exercisable by Trustee in its sole discretion. Manager shall have the right to make recommendations to Owner with respect to the hiring and firing of employees of Owner who are under the day-to-day supervision of Manager, but in no event shall Manager have any right to effectuate such hiring or firing of Owner's employees. Notwithstanding Trustee's rights of approval and removal as set forth above, and notwithstanding anything herein to the contrary, (a) Manager (and not Owner) shall conduct the day-to-day supervision of Manager's on-site staff, (b) Owner shall bear no responsibility or liability for Claims resulting from the gross negligence or willful misconduct of any employee of Manager, and (c) Manager shall indemnify Owner for all Claims incurred by Owner as a result of any such gross negligence or willful misconduct of Manager's employees in accordance with the terms of Article 12 hereinabove, provided that nothing herein shall be deemed to require Manager to indemnify Owner for any such gross negligence which (i) results from any act or omission of any employee of Manager, which act or omission is expressly directed by Owner and is performed in accordance with such direction, or (ii) is covered by Owner's insurance.

B.  Manager and Owner agree that the on-site manager of the Property may, in Manager's discretion, supervise other buildings managed by Manager or perform other services related to other buildings managed by Manager.

## Article 14
## Notices

14. Any notice, consent, approval or other communication hereunder (a "<u>Notice</u>") required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given (i) when delivered, if hand delivered, or (ii) the second business day after the same is deposited with a reputable nationally or internationally recognized overnight courier marked for "next day" delivery, postage prepaid, return receipt required, or (iii) the next business day if sent by facsimile with receipted confirmation, and shall be addressed as follows:

If to Owner:    Jonathan L. Flaxer, as Trustee
c/o Golenbock, Eiseman, Assor, Bell & Peskoe, LLP
437 Madison Avenue
New York, New York 10022

If to Manager:    PRC Management Corporation
240 Madison Avenue
9th Floor
New York, New York 10016
Facsimile: (212) 213-2546
Attn: David Khazzam

or such other address or addresses as either party may from time to time specify in writing to the other by notice delivered in accordance with this section.

### Article 15
### Representations of Manager

15.     Manager hereby represents, warrants, covenants and agrees that:

A.      Manager has the authority to enter into and to perform this Agreement, to execute and deliver all documents relating to this Agreement, and to incur the obligations provided for in this Agreement.

B.      When executed, this Agreement, together with all documents executed pursuant hereto, shall constitute the valid and legally binding obligations of Manager in accordance with its terms.

C.      Manager has all necessary licenses, consents and permissions to enter into this Agreement, to manage the Property, and otherwise to comply with and perform Manager's obligations and duties hereunder. Manager shall comply with any conditions or requirements set out in any such licenses, consents and permissions, and shall at all times operate and manage the Property in accordance with such conditions and requirements.

D.      During the term of this Agreement, Manager will be a valid corporation, duly organized under the laws of the jurisdiction in which it was formed, and shall have full power and authority to manage the Property, and otherwise to comply with and perform Manager's obligations and duties under this Agreement.

### Article 16
## Miscellaneous

16.     A.      Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the management of the Property, and any agreements, whether oral or written, heretofore entered into between the parties with respect to such matter are hereby canceled and of no further force or effect. This Agreement shall be binding upon any entity affiliated with Owner, directly or indirectly, who shall acquire the Property from Owner. This Agreement may not be modified except by an agreement in writing between the parties.

B.      Governing Law and Forum. The United States Bankruptcy Court of the Eastern District of New York shall have sole and exclusive jurisdiction over any claims, suits or proceedings arising from this Agreement, and New York law shall govern and be applicable to the terms of this Agreement.

C       Brokerage Fees. Manager shall not be entitled to any compensation based upon any Property financing or sale of the Property unless Manager is engaged, pursuant to a separate agreement approved by the Investor Member of Owner, to provide brokerage

services in connection therewith, in which case Manager's right to compensation for Property financing or sale shall be based upon such separate agreement.

D. <u>Management Office</u>. Where applicable, Owner shall provide a management office on the floor of the building with such desks and other furnishings as may reasonably be required for one employee of Manager, including one computer terminal. All costs to run and maintain such onsite office shall be at Owner's sole cost and expense. If no management office is available onsite, Manager's employee will be based at Manager's offices.

E. <u>Advertising Costs</u>. Owner shall be responsible for all costs of advertising, marketing, rentals and re-rentals of units at the Property.

F. <u>Subordination:</u> Owner (or if applicable, Owner affiliates) shall have the right to encumber all of the assets that comprise the Property, and part thereof, or any interest therein, including the buildings and all improvements thereto and all equipment and operating supplies placed in or used in connection with the operation of the Property as contemplated in any mortgage, and to assign to any institutional lender as collateral security for any loan secured by the mortgage (or its equivalent) as a first lien on the Property and all of Owner's right, title and interest in and to this Agreement. On reasonable advance notice from a mortgagee (except in an emergency), Manager, with the Trustee's written consent, shall accord to such person and its agents the right to enter on any part of the Property at any reasonable time for the purposes of examining or inspecting the same, or examining or making extracts from the books of account and financial records of the Property; provided, however, that any expenses incurred in the Property's name in connection with such activities shall be an expense of the Owner.

Manager agrees that it will execute a subordination agreement required by an institutional lender which holds a first mortgage or other equivalent lien on the Property.

G. <u>Advance of Funds</u>. Manager shall not be required to advance any funds for the operation of the Property.

H. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be an original, and all of which together shall constitute one and the same Agreement.

I. <u>Court Approval</u>. All of the Trustee's obligations hereunder are subject to the Bankruptcy Court's approval

J. <u>Other Orders of the Bankruptcy Court</u>. Manager shall comply with all orders of the Bankruptcy Court.

[signature page to follow]

IN WITNESS WHEREOF, the parties hereto have caused their respective hands and seals to be affixed to this Agreement as of the date set forth above.

OWNER:                           South Side House LLC

By: _____, as chapter 11 trustee
Name: Jonathan L. Flaxer
Title: as Chapter 11 trustee

MANAGER:

PRC MANAGEMENT CORPORATION

By: David Khazzam
Title: Vice President