## EXHIBIT C

**Declaration of Jonathan L. Flaxer**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re                                                            :        Chapter 11
                                                                 :
SOUTH SIDE HOUSE LLC,                                            :        Case No. 09-43576 (ESS)
                                                                 :
                      Debtor.                                       :
                                                                 :
-----------------------------------------------------------------X

## DECLARATION OF JONATHAN L. FLAXER

JONATHAN L. FLAXER, pursuant to 28 U.S.C. §1746, hereby deposes and says:

1. I am the duly appointed chapter 11 trustee for South Side House LLC (the "**Debtor**") and am familiar with the matters set forth herein based upon my investigation to date, and the investigation of my proposed professionals to date, of the affairs of the Debtor.

2. I submit this declaration in support of the Emergency Application (the "**Emergency Application**") for an order authorizing me (a) to enter into a management agreement (the "**Management Agreement**") with PRC Management Corp. ("**PRC**") for management of the property located at 98-116 South Fourth Street, Brooklyn, New York 11249 (the "**Property**"), and (b) rejecting any management agreement that may exist between South Side Associates ("**SSA**") and the Debtor.

### A.     Events Preceding My Appointment

3. Upon information and belief, Menachem "Max" Stark ("**Stark**") and Israel "Sam" Perlmutter ("**Perlmutter**") were the only two members of the Debtor, and Stark was the Debtor's principal manager.

4. According to various news articles, on or about January 2, 2014, Stark was abducted, and on or about January 3, 2014, Stark was discovered deceased.

5.  On January 9, 2014, the Court granted the motion by German American Credit Corporation ("**GACC**") to compel the Debtor's counsel to produce certain bank account information.

6.  On January 14, 2014, GACC filed a motion to compel production of documents from several additional parties.

7.  As stated, at a hearing held on January 15, 2014, on GACC's motion, the Office of the United States Trustee made an oral motion for the appointment of a Chapter 11 trustee followed by an application to appoint Jonathan L. Flaxer as trustee, which was granted on January 17, 2014.

**B.    My Initial Investigation**

8.  In the limited time since I was appointed, I have reviewed certain documents that demonstrate that at least $1.7 million has been improperly taken from the Debtor's DIP account, #7047203427. It also appears that the copies of Capital One bank statements for the DIP account attached to the Debtor's Monthly Operating Reports may have been tampered with to conceal the diversion.

9.  Additionally, the amount in the Debtor in Possession Security Deposit Account is approximately $3,500. Considering the number of units in the building and the rent roll, the amount in the security deposit account should be well in excess of $200,000. Thus, I have reason to believe that further monies have been misappropriated.

**C.    Current Property Manager (SSA)**

10. Prior to my appointment, SSA had been functioning as the Debtor's property manager at no charge to the Estate. I do not know whether there is a formal written contract between SSA and the Debtor. On information and belief, an insider, or similar type of close

relationship, exist or existed among SSA, Stark and/or Perlmutter. After my appointment, I tried to contact representatives of SSA in order to inquire about the Debtor's affairs. SSA did not respond even on a limited basis until January 22, 2014, and since then SSA only communicates through counsel. Based on the foregoing, I believe that it is urgent that SSA be replaced with an independent property manager immediately.

**D.** **Replacement Property Manager (PRC)**

11. Following my appointment, I obtained the names of potential property managers from several sources including my proposed real estate advisor GA Keen Realty. I obtained written proposals and references from three property management firms including PRC. I've concluded that PRC is highly qualified and made the most financially advantageous proposal for the Estate. A summary of PRC's qualifications is attached to the Emergency Application. In the past, my counsel, Golenbock Eiseman Assor Bell & Peskoe LLP, represented two entities, 2409 Broadway Associates and Columbia Place Associates, that are affiliates of PRC. In no year has such work represented more than .1% of the firm's revenues.

12. The following is a short summary of certain aspects of the Management Agreement. This summary is qualified in its entirety by the Management Agreement itself. In the event of any discrepancy between this summary and the Management Agreement, the Management Agreement shall control:

- **Duties.** PRC shall perform all services with respect to the Property as are customary in the industry including collecting rents, maintaining books and records, paying expenses of the Property, and maintaining statements of receipts and disbursements for the Property.

- **Term.** Five years terminable without cause by either party on 90-days written notice.

- **Operating Account.** PRC will deposit all rent collections into a segregated operating account at JP Morgan Chase bank. At my request, excess funds will be transferred to the Estate account that I am maintaining, and only signatories approved by me will be authorized to write checks on the PRC operating account.

- **Small Settlements.** PRC will be permitted to settle disputes with tenants without Bankruptcy Court or my approval if the dispute is over an amount less than $2,000.

- **Insurance.** PRC will be required to maintain liability and other insurance in the amount of $2 million per occurrence.

- **Indemnities.** PRC and I shall mutually indemnify each other.

- **Management Fee.** Greater of $8,000 per month or 2.75% of gross rents collected on a monthly basis.

13. I respectfully request that the Court authorize me to retain PRC in accordance with the Management Agreement and to reject any executory contracts between the Debtor and SSA.

14. In the instant case, both the decision to enter into the Management Agreement with PRC and to reject any management or similar agreement with SSA satisfy the business judgment test. Based upon the circumstances set forth above, including the unavailability of any SSA employee with whom I can communicate, the rejection of the agreement with SSA is a sound exercise of my business judgment. Further, I have undertaken sufficient due diligence with respect to PRC, particularly given the compressed time frame within which I needed to

operate. For the reasons described above, the engagement of PRC is also a sound exercise of my business judgment and should be approved.

15. I seek a hearing later this week on this Emergency Motion even though the Court has previously scheduled a hearing on other matters for February 4, 2014. Rents will be due on February 1, 2014. Unless PRC is approved as property manager this week, SSA, not PRC, will be responsible for collecting rents that are due on February 1, 2014. Therefore, in light of the circumstances described above, I believe it is imperative that PRC be installed as property manager on or prior to February 1, 2014.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 27, 2014, at New York, New York.

/s/ Jonathan L. Flaxer
JONATHAN L. FLAXER

1929379.3